[Civ. No. 5501. Third Appellate District.—January 28, 1937.]

THE PEOPLE, etc., Appellant, v. S. E. AYER et al., Respondents.

Clarence W. Morris and Clifford Good for Appellant.

Pugh & Pugh and Fred C. Pugh for Respondents.

PULLEN, P. J.—This action in eminent domain was instituted by the People acting by and through the Department of Public Works against the owner of a piece of real property and others to condemn an easement through this property for the purpose of constructing and maintaining a state

highway. The owner answered, alleging the value of the property sought to be taken was $100 and the damages to the remainder by reason of its severance whereby he was deprived of a right of way to the main highway was the sum of $1500. The matter came on for trial before a jury and the owner was awarded $100 for the property taken and $1400 severance damages. The People have appealed and assign as errors the action of the trial court in refusing to permit evidence to go before the jury on the question of the feasibility of using a particular piece of land as a means of ingress and egress, the court instructing the jury that this parcel did not belong to the respondent, and that the verdict and judgment are contrary to the evidence.

The principal tract in question is a triangular piece of river bottom land containing about 11 acres adjoining the city of Red Bluff, and lies in the fractional northwest quarter of northwest quarter of section 20, being known as lot 1 of section 20, and is bounded on the east by the Sacramento River, on the north by the lands of George Vestal Company, on the west by the city of Red Bluff and on the south by the Sacramento River. Extending westerly from this tract is a narrow piece of land in block 86 of the city of Red Bluff, following the general line of Brewery Creek to the main highway. The particular parcel sought to be taken in this action is a strip of land containing approximately 9/100ths of an acre where the land of respondent lying along Brewery Creek intersects the state highway right of way. All of this property was in 1923 conveyed by deed from William F. Erwin to Ayer and therein described as "all of lot one (1), in section twenty (20), in township twenty-seven (27) north, of range three (3), west, M.D.M., with all accretions thereto and therewith belonging. And all that portion of block eighty-six of the city of Red Bluff, and of section nineteen, in said township and range, lying and being north and east of a certain line hereinafter described (the same being a meander line of the center of Brewery Creek for a portion of the distance) and all land belonging to the grantors or in which they have any interest lying north and east of said line, together with any and all accretions thereto or therewith belonging". By the same deed the grantors conveyed "a right of way from said conveyed land . . . to the road and highway, for stock or

vehicles or other necessary uses to or from said lands and to or from said road''. At the time of the conveyance respondent Ayer held a contract to purchase the Vestal ranch, the adjoining property on the north, but prior to the commencement of this action respondent had surrendered his option or contract, cutting off his access to the highway in that direction.

The real issue here has to do with a means of ingress or egress to and from the Ayer property, which by reason of various physical obstacles, and the taking of the entire frontage along the state highway makes the problem one of some difficulty.

Appellant claims respondent still has a practical route either up Brewery Creek and onto the highway by means of a roadway up the fill, or along a strip of land south of Brewery Creek in lot 1 in section 20, lying immediately to the east of block 86 and west of the river, which connects with Douglass Street. As to the route along the bed of Brewery Creek respondents claim and we think justifiably that such a way is impracticable and almost impassable.

At the trial the court instructed the jury that respondent was not the owner of the strip of land lying between the easterly line of block 86 and the Sacramento River, which connects the land of respondent and Douglass Street. Appellant contends such instruction was erroneous and that if it had been permitted to introduce evidence that respondent was the owner thereof the jury could not have brought in a verdict against the appellant for severance damages, for ingress and egress to and from lot 1 would have been in nowise impaired by the construction of the state highway.

It was also the contention of respondents that the deed from Erwin to Ayer conveyed a strip of land along the south bank of Brewery Creek, by which means they proposed to reach the highway, and it was for the obstruction thereof the jury apparently awarded substantial damages. The court instructed the jury Ayer possessed such a strip on the south side of the creek, which is also cited as error. The deed granting the right of way specified ''over and along the bed of said Brewery Creek and up and out therefrom along the western portion . . . to the road . . . ''. Examining this instrument, it is evident that Erwin was attempting to grant a way to respondent to the highway. It

must have been obvious to them that the bed of the creek was not a practical way for "stock and vehicles". Also these men, familiar with the land, undoubtedly knew that a portion of the line to the north of the creek would cross the lands of another, so it would have been impossible for Erwin to have granted a way along the north bank of the creek. The general rule for the interpretation of conflicting descriptions is given in 9 California Jurisprudence, at page 293, as follows:

"When a deed contains conflicting descriptions, the Court will harmonize and give effect to every part of the description if possible, but if this cannot be done it rejects that which is repugnant to the general intent of the instrument. In ascertaining the intention the Court will look into all the facts surrounding the parties when the instrument was made, and give effect to the description which is the most definite and certain, and least likely to be mistaken or affected by errors."

We are of the opinion therefore the court was not in error in holding the right of way extended along the south bank of Brewery Creek.

The most important and the most difficult question, however, arises as to the ownership of the strip of land lying south of Brewery Creek and east of lot 86, or as lot 86 of the city of Red Bluff is in the northeast quarter of northeast quarter of section 19, this dispute is concerned with a piece of accreted land lying east of the section line between sections 19 and 20 and the Sacramento River, and south of Brewery Creek. Respondents contend the deed from Erwin did not cover any land east of lot 86 and south of Brewery Creek.

It will be noted, however, that the deed conveyed "all of lot 1 . . . with all accretions thereto and therewith belonging". It is in evidence that in 1923, the date of the Erwin conveyance, there were accretions lying to the east of block 86 over into lot 1 of section 20, and while it is a fact that the official map of the city of Red Bluff, to which reference was made in the deed from Erwin to Ayer, showed that lot 86 was bounded on the east by the Sacramento River, that map was prepared in 1878 and there is evidence to the effect that accretions have been added to said lands subsequent to that time. If Ayer did acquire title

to said strip of land lying to the east of lot 86, and said strip extended from the mouth of Brewery Creek to Douglass Street it is evident that Ayer would have a practical means of ingress and egress to and from his property. It, therefore, became quite material whether or not this small piece of land belongs to Ayer.

Originally it was undoubtedly true that the west bank of the Sacramento River extended across the section line between sections 19 and 20 and into block 86 of the city of Red Bluff, so that in 1878, when the city was platted and the official map was made and filed, block 86 lying in section 19 was bounded on the east by the river. Due to accretions from the river thereafter and the gradual subsidence of the stream, the river does not now apparently extend into section 19, but is some distance to the east in section 20. At the time of the deed to Ayer in 1923 the strip of land lying between block 86 and the river was about the same as it is today.

It is the contention of respondents that, inasmuch as the patent to the townsite of Red Bluff described the easterly boundary line of block 86 as the Sacramento River, thereby block 86 would follow the changing course of the river and extend over into section 20. However, the government patent to Red Bluff limited its boundary at that point to the fractional east half of northeast quarter of section 19. The fact that the river at a later date moved eastward and across the section line into section 20 would not extend the limits of the city of Red Bluff. The owner of the adjacent property, whether an individual or a city in its proprietary capacity, would become the owner of the land created by accretion, but it would not thereby extend the boundary line of block 86 of the city of Red Bluff. The prior government patent, fixing the external boundary of the city and the section lines, must prevail over the boundary lines of a subdivision created by the city.

The assessor of the county of Tehama testified that since 1923 there was assessed to Mr. Ayer "Lot 1 and all that part of the Northwest quarter of the Northwest quarter, Section 20, 27 [N.], 3 West, lying north and west of the Sacramento River and east of Block 86, City of Red Bluff". Whether or not Mr. Ayer is the present owner of the strip of land in question, we do not know, and whether it extended from

Brewery Creek to Douglass Street is also a question of fact to be determined, but we are of the opinion the court erred in holding as a matter of law that Ayer had no title to any lands in section 20 lying south of the mouth of Brewery Creek and the cause should be returned for further inquiry upon this issue. It is therefore so ordered. The judgment is reversed, respondent to recover costs.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 24, 1937.