[Civ. No. 23235.   Second Dist., Div. Two.   Jan. 5, 1959.]

CITY OF HAWTHORNE, Respondent, v. CLARENCE R. PEEBLES et al., Defendants; ROBERT P. LUKE et al., Appellants.

Arthur J. Manley for Appellants.

David Rice, City Attorney, and David R. Denny for Respondent.

HERNDON, J.—The judgment here presented for review condemns certain parcels of land sought by respondent city for use as a part of its public park system. By its ordinance, the city council declared its determination that the public interest and necessity required the acquisition of certain described parcels of real property aggregating 8.2 acres in area for a public park. Part of this proposed park lies within the corporate limits of the city and part of it lies outside. All the parcels involved in this appeal lie outside the city limits, but each is bounded on one side by the city boundary line.

The adequacy of the compensatory award is not questioned. The questions involved as stated by appellants are as follows: "(1) Can a city be authorized to condemn property outside its limits for park purposes? (2) Did the City of Hawthorne abuse its discretion in seeking to condemn property outside its borders for park purposes? (3) Was there a public necessity for taking the land?"

We have concluded that each of the foregoing questions posed by appellants must be answered adversely to their contentions, and that the judgment at bar is well supported both legally and factually.

First, the power of a city to acquire land for park purposes either by purchase or by condemnation is expressly conferred by section 5301 of the Public Resources Code. Section 5302 of the same code provides that ''The land may be within the corporate limits of the city . . . or conveniently adjacent . . .'' Section 5303 provides that ''The legislative body of any city or city and county may, by ordinance, . . . determine what lands are necessary and proper to be acquired for public parks or boulevards.'' Appellants do not argue that any of the foregoing statutory provisions is unconstitutional. ''There is no constitutional objection to condemnation by a municipal corporation of property wholly outside its corporate limits, if the condemnation has the purpose of serving its inhabitants.'' (17 Cal.Jur.2d 768, § 231; *Sacramento Dist.* v. *Pacific Gas & Elec. Co.*, 72 Cal.App.2d 638, 652 [165 P.2d 741].)

Second, the contention that respondent ''abused its discretion in seeking to condemn property outside its borders for park purposes'' is negated by the well supported finding of the trial court that the public interest and necessity required the acquisition by respondent of the subject real property for public park purposes.

Recognizing that its ordinance would not constitute conclusive evidence of the necessity and propriety of the proposed acquisition of property located outside its territorial limits (Code Civ. Proc., § 1241, subd. 2), respondent assumed the burden of proof in the trial court. Respondent called as an expert witness its Director of Parks and Recreations. His qualifications are not challenged. The testimony of this witness was more than sufficient to sustain the essential findings. He testified to the following effect: that respondent city with a population of some 30,000 had only one public park containing an area of 12.94 acres; that an adequate system of parks would require 1 acre of park for each 100 of population; that the existing park was of such shape and so located that it was neither adequate nor suitable; that the tract, of which the subject parcels are a part, is well suited, properly located and desirable to serve the needs of the community for recreational facilities. The testimony of this witness was neither impeached nor contradicted.

Third, appellants are in error when they argue in effect that the required measure of public necessity is a mechanically absolute necessity, or, to use the language of their brief, that the acquisition must be "indispensably necessary."

Generally, statutory requirements of *necessity* as a condition of the exercise of the power of eminent domain are liberally construed by the courts so as not to limit unnecessarily the power of the condemning agency. This liberal construction has been applied in several recent cases from other jurisdictions. In *Latchis* v. *State Highway Board* (1957), 120 Vt. 120 [134 A.2d 191, 194], where the statute required "necessity" for condemnation, the court said: "The necessity specified by the statute . . . does not mean an imperative or indispensable or absolute necessity but only that the taking provided for be reasonably necessary for the accomplishment of the end in view under the particular circumstances." In *Klump* v. *Cybulski* (1957), 274 Wis. 604 [81 N.W.2d 42, 47], the court said of the statutory requirement: "the 'necessity' required to support condemnation is only a reasonable, and not an absolute or imperative, necessity." And finally in *State* v. *Pinson* (1949), 66 Nev. 227 [207 P.2d 1105, 1107], the court said: ". . . the word 'necessity' as used in the statute does not mean an absolute and unconditional necessity as determined by physical causes . . . the word 'necessity' must be deemed to mean a reasonable necessity under all of the circumstances of the particular case."

The cases above reflect the general rule as stated in 29 Corpus Juris Secundum 886, section 90: " '*Necessity*,' within the rule that the particular property to be appropriated must be necessary, does not mean an absolute but only a reasonable or practical necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit, although it does not include the taking of land which may merely render the employment of the improvement more convenient or less expensive, or for a necessity which is merely colorable."

In California, as early as 1861, in the leading case of *Gilmer* v. *Lime Point*, 18 Cal. 229, 250, the Supreme Court had occasion to remark: "To each and every sovereignty belong certain rights which are deemed essential to its existence. . . . When applied to property alone, it is called the *dominium eminens*, or the right of eminent domain; that is,

the right of the sovereignty to use the property of its members for the public good or public necessity. The word *necessity*, in this connection, is not to be used in too limited a sense; it means a want, an exigency, an expediency, for the interest or safety of the State.''

It is, of course, a question for the trier of fact whether a taking is necessary. (*Spring Valley W.W.* v. *Drinkhouse*, 92 Cal. 528, 532 [28 P. 681] ; see 17 Cal.Jur.2d 748-749, § 200.)

And, in considering the question of necessity, the court may consider immediate future needs (*Kern County Union High School Dist.* v. *McDonald*, 180 Cal. 7, 14 [179 P. 180]), other available facilities (*cf. Rialto Irrigating Dist.* v. *Brandon*, 103 Cal. 384, 387 [37 P. 484] ; *Spring Valley Water Works* v. *San Mateo Water Works*, 64 Cal. 123 [28 P. 447]), or public economic considerations. (*Sacramento Dist.* v. *Pacific Gas & Elec. Co., supra,* 72 Cal.App.2d 638, 654; see 17 Cal.Jur.2d 748-750, §§ 200-201.)

In *Montebello Unified School Dist.* v. *Keay*, 55 Cal.App.2d 839, 842-844 [131 P.2d 384], following an adverse judgment in the trial court, the defendant landowners in a condemnation proceeding appealed, contending that the ''. . . parcel of land being condemned was not located in the manner most compatible with the greatest public good and least private injury'' as required by statute. (Code Civ. Proc., § 1242.) Rejecting appellant's contentions, which by implication, attacked the finding that ''. . . the public interest and necessity require the acquisition of said property . . .'' the court said : '' 'In all cases where land is required for public use, the state, or its agents in charge of such use' (quoting again from Code Civ. Proc., § 1242) 'may survey and locate the same,' and in doing so 'the condemning party is vested with wide discretion. . . . we think that when an attempt is made to show that the location made is unnecessarily injurious, the proof ought to be clear and convincing; for otherwise no location could ever be made. If the first selection made on behalf of the public could be set aside on slight or doubtful proof, a second selection would be set aside in the same manner, and so *ad infinitum.* The improvement could never be secured, because whatever location was proposed, it could be defeated by showing another just as good.'

''In this case it is the school district, acting through its governing board, that is the agent of the State in charge of the use for which the land was sought. (Civ. Code, § 1001; Sch. Code, §§ 6.102 and 6.103.) Its act, in selecting the par-

ticular site herein sought, 'should, in the absence of evidence to the contrary, be presumed correct and lawful.' "

In reviewing the evidence, which amply supported the disputed finding as to necessity, the court observed that the statute required ". . . a balancing of the greatest public good and the least private injury. A parcel of land with objectionable features is not to be chosen just because poorer land is available." As stated in 1 Nichols, Eminent Domain, 391-392, section 4.11[4], ". . . it is generally held, necessity does not signify impossibility of constructing the improvement for which the power has been granted without taking the land in question, but merely requires that the land be reasonably suitable and useful for the improvement." (See *Spring Valley Water Works* v. *San Mateo Water Works*, *supra*, 64 Cal. 123; *Rialto Irrigating Dist.* v. *Brandon*, *supra*, 103 Cal. 384, 387; *City of Pasadena* v. *Stimson*, 91 Cal. 238, 253 [27 P. 604].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.