[Civ. No. 25203. Second Dist., Div. Two. May 15, 1962.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. JAMES S. BARTLETT et al., Defendants and Appellants.

Phill Silver for Defendants and Appellants.

Harold W. Kennedy, County Counsel, and Norman G. Oliver, Jr., Deputy County Counsel, for Plaintiff and Respondent.

HERNDON, J.—This is an appeal by defendants Bartlett from a judgment of condemnation entered after a jury trial. This proceeding was filed by plaintiff and respondent County of Los Angeles on December 12, 1958. The judgment determines that upon respondent's payment to appellants of the sum of $4,500, respondent shall become the owner of the real property described in the complaint.

The complaint is in conventional form and alleges that the public interest and necessity require the acquisition by respondent of the real property therein described for a public use, namely, for public buildings and grounds, public mooring places for watercraft, public parks, harbors, etc. It further alleges that the board of supervisors adopted a resolution by a four-fifths vote of all its members finding and determining that the public interest and necessity required the acquisition by respondent of the real property sought to be condemned.

Appellants' answers deny the public necessity for the taking of the described property and deny that the public use referred to in the complaint had been planned and located in a manner that would be most compatible with the greatest public

good and the least private injury. As affirmative defenses they allege: (a) that there was no public necessity for the taking of the property; (b) that the public use referred to in the complaint had not been planned and located in a manner that would be most compatible with the greatest public good and the least private injury; (c) that the resolution adopted by the board of supervisors constituted an abuse of discretion for the reason that the amount of land to be appropriated was in excess of the land necessary for the described public purpose.

The answers tendered a further issue with respect to appellants' access to the subject property by way of ingress and egress, alleging as follows: "The defendants contend that they do have such access to said land as to both ingress and egress, in this that a canal fronting their land is a public street and that Sanborn Avenue Alley, which is at the rear of the defendants' lot affords ingress and egress from the rear of the defendants' lot to Washington Street."

By common consent, the parties submitted to the court the issue concerning access for determination prior to the impanelment of the jury. After receiving the evidence offered by the parties, the court found and held that appellants did have access to the subject property over the canal and street fronting thereon as they had alleged in their answers. The court found and held, however, that appellants had no easement, either by implication or by necessity, over adjoining property, which easement would give them access from the rear of their property to Sanborn Avenue Alley and Washington Street.

Appellants' first two assignments of error assert that the last mentioned holding was erroneous in that they owned the alleged easement both by necessity and by implication. The subject property is surrounded on three sides by land owned by the county and which it had acquired from other landowners by condemnation. The subject property, on the fourth side, fronts on Grand Canal, which was dedicated to the public for "canal or street purposes" by deed recorded December 12, 1924. It appears, therefore, that the subject property enjoys the right in common with the public to use the Grand Canal as a means of access as alleged in appellants' answers.

It appears from the record that in 1905 the subject property, and all contiguous lots, were owned by Union Trust and Title Company and Title Insurance and Trust Company.

Appellants' claim of title commences with a deed to Emma G. Gillingham from Union Trust and Title Company recorded February 7, 1906. In said deed the grantor reserved unto itself "the exclusive right to construct and forever maintain canals in, along and across all streets and alleys, and every part thereof, shown upon said map, or which may hereafter be dedicated or otherwise laid out or created. . . ." Said deed further recites in part:

"And provided also that the party of the first part does not hereby grant, bargain, sell or convey any right of way, privilege, easement or right whatsoever in, upon or over any part or portion of said Tract nor shall party of the second part have or acquire any right of way, privilege, easement or right in, upon or over any part or portion of said Tract, excepting the easement of a right of way for street purposes, in common with the public, over such portions of said tract over which a right of way has been duly dedicated by the party of the first part for public streets and alleys. . . ."

The California law is well settled that the right of way from necessity cannot be established without a showing of strict necessity. "To be an easement by necessity, a route must in fact be the *only possible* means of access." (Emphasis added.) (*Zunino* v. *Gabriel,* 182 Cal.App.2d 613, 617 [6 Cal.Rptr. 514].) In *Corea* v. *Higuera,* 153 Cal. 451, 454 [95 P. 882, 17 L.R.A. N.S. 1018], the following language from *Kripp* v. *Curtis,* 71 Cal. 62 [11 P. 879] is quoted with approval:

" 'The right of way from necessity must be in fact what the term naturally imports, and cannot exist except in cases of strict necessity. . . . That the way over his land is too steep, or too narrow, or that other and like difficulties exist, does not alter the case, and it is only when there is no way through his own land that a grantee can claim a right over that of his grantor. It must also appear that the grantee has no other way.' "

As we have stated above appellants allege in their answers, and the court found, that they had access to said land "as to both ingress and egress, in this that a canal fronting on their land is a public street . . ." In their closing brief, appellants for the first time assert that said canal was withdrawn from public access by an ordinance adopted pursuant to the provisions of Government Code, section 37359.

In the first place, no such ordinance was either offered in evidence or so much as mentioned in the trial court. It

is well settled law that neither the trial court nor this court takes judicial notice of municipal or county ordinances. (18 Cal.Jur.2d, Evidence, § 28, p. 451, and cases cited; *People* v. *Burkhart*, 5 Cal.2d 641, 643 [55 P.2d 846]; *Higbee* v. *LaSalle*, 145 Cal.App.2d 737, 739 [303 P.2d 65]; *Shachunazarian* v. *Widmer*, 159 Cal.App.2d 180, 182 [323 P.2d 865].) In the second place, the fact that any such ordinance could have no application to the instant case is indicated by the provision of said section 37359 that "This section does not limit or restrict any person from access or use who has a private right in the property." It appears to be undisputed that the Grand Canal was dedicated to the public for "canal or street purposes" by a deed duly recorded in December 1924. The subject property therefore enjoys the right, in common with the public, to use the Grand Canal as appellants themselves have affirmatively alleged.

 It is well settled that the law never imposes an implied easement or an easement by necessity contrary to the express intent of the parties. It appears from the record that the subject property was bounded on three sides by property owned by the grantor named in the deed which conveyed the subject property to appellants' predecessor in title. As we have shown, said deed conveyed no "right of way, privilege, easement or right whatsoever" over any of the lots contiguous to the subject lot. Thus, the intent of the parties was clearly stated.

 The general rule is stated in 28 Corpus Juris Secundum, section 35, page 696, as follows: ". . . The implication of an easement by necessity is based upon the inferred intent of the parties, which is to be determined from the terms of the instrument and circumstances surrounding the transaction; the implication will not be made where it is shown that the parties did not intend it. . . . Necessity alone without reference to any relations between the respective owners of the land is not sufficient to create this right."

All of the cases cited by appellants express the general rule regarding the creation of easements by necessity where the requisite conditions exist and where no contrary intent is expressed by the parties. In *San Joaquin Valley Bank* v. *Dodge*, 125 Cal. 77, 80 [57 P. 687], the court recognized that ways by necessity arise by implication, stating: "In such cases the grantor impliedly grants a right of way over his land as incident to the purchaser's occupation and the enjoyment of the premises granted."

"An implication of the grant of a way of necessity may arise from the transaction, but the necessity does not of itself create a right of way, though it may be evidence of the grantor's intention to convey one and raise an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied depends upon the *terms of the deed* and the facts of the case. [Citations.] *The implication will not be made where it is shown the parties did not intend it.*" (Emphasis added.) (*Penn Mutual Life Ins. Co.* v. *Nelson* (1943) 170 Ore. 248 [132 P.2d 979]; to the same effect see *Orpin* v. *Morrison*, 230 Mass. 529 [120 N.E. 183] and *Brasington* v. *Williams*, 143 S.C. 223 [141 S.E. 375].)

██ Implied easements, like ways by necessity, arise from circumstances affording the basis for a finding that the parties intended to create the easement. ██ As stated by our Supreme Court in *Fristoe* v. *Drapeau*, 35 Cal.2d 5, 8 [215 P.2d 729], "The purpose of the doctrine of implied easements is to give effect to the *actual intent* of the parties as shown by all the facts and circumstances." (Emphasis added.)

██ *Orr* v. *Kirk*, 100 Cal.App.2d 678, 681 [224 P.2d 71]: "The elements necessary to create a 'quasi easement' or grant by implication, upon severance of unity of ownership in an estate, are: (1) a separation of title (which implies unity of ownership at some former time as the foundation of the right); (2) necessity that before separation takes place the use which gives rise to the easement shall be so long continued and obvious as to show it was meant to be permanent; and (3) the easement must be reasonably necessary to the beneficial enjoyment of the land granted. (*Fristoe* v. *Drapeau*, *supra*.) ██ The law does not favor the implication of easements. . . . Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must clearly appear in order to sustain an easement by implication. In order to determine the intent, the court will take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted. (28 C.J.S. p. 686, § 30.) The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances."

As observed in *Fristoe* v. *Drapeau*, *supra*, 35 Cal.2d 5, 8-9, evidence of prior use, or the conveyance of land by reference to a map or plat showing access to proposed streets, has been held sufficient to support a finding of the existence of an implied easement. ██ In the case at bar the evidence

shows no prior use of the claimed easement. All of the tract maps received in evidence show that the subject property had no access to any proposed street, alley or right of way. Indeed, they indicate that there was to be no dedication of any of the property which adjoins the subject lot on three sides.

We conclude that the challenged finding and holding of the trial court is amply supported by evidence that the imposition of an easement by virtue of asserted necessity or by implication would be contrary to the expressed intent of the parties and contrary to appellant's own allegation that they had access by way of the canal and the street running parallel therewith. The court's holding, as we have shown, is fully supported by the applicable law.

Appellant's major contention is that the trial court erred in rejecting evidence which they offered in support of the affirmative defenses pleaded in their answers. ▉▉▉ In support of this contention, appellants first present an argument and cite authorities in support of the unquestioned legal proposition that whether the land is being condemned for a "public use" is a justiciable issue. The argument is wholly useless and ineffectual in this case because the record shows that at no time did respondent contend, nor did the trial court ever rule, that the question of "public use" was not a justiciable issue. Moreover, this was not set forth as one of the affirmative defenses. From appellant's conduct and statements made during the trial, it appeared to be conceded and taken for granted that the contemplated use was a *"public use."* Appellants offered no evidence whatsoever to the contrary. It is, of course, specifically provided in subdivision 3 of section 1238 of the Code of Civil Procedure that the contemplated uses as alleged are "public uses."

▉▉▉ Appellant's second argument is that the trial court erred in refusing to permit them to introduce evidence to prove "that the public use had not been planned and located in a manner that would be most compatible with the greatest public good and the least private injury." The complete answer to this argument is that the resolution adopted by the Board of Supervisors of Los Angeles County declared and conclusively established "that the public interest and necessity require the acquisition of the fee simple title in and to the property hereinafter described for public buildings, and grounds, public mooring places for water craft, public parks, harbors, and for any public use authorized by law. That the said property is necessary for such public uses and purpose,

and that such proposed public improvement and use is located in a manner which would be most compatible with the greatest public good and the least private injury. . . .'' The conclusiveness of the ordinance is expressly stated in section 1241, subdivision 2(a), (b) and (c), of the Code of Civil Procedure, and is established by the decisions in *People* v. *Chevalier,* 52 Cal.2d 299, 307 [340 P.2d 598], and *People* v. *City of Los Angeles,* 179 Cal.App.2d 558, 568 [4 Cal.Rptr. 531], hereinafter quoted.

Moreover, the record shows that the only offers of proof made by appellants were to show that the board of supervisors had abused its discretion (a) by seeking to acquire land in excess of that necessary for the designated purpose, and (b) in failing to minimize damages by refusing to exchange properties with appellants in conformity with an offer made by them. As the decisions hereinafter discussed will demonstrate, these offers of proof related solely to issues as to which the resolution of the condemning body is conclusive.

 Appellants advance as one of their major assignments of error the complaint that the trial court refused to receive evidence in support of their allegations that there was no public necessity for the taking of their property for the purposes set forth in the complaint, and that the resolution adopted by the board of supervisors constituted an abuse of discretion for the reason that the amount of land to be appropriated was in excess of the land necessary for the indicated purpose, extravagant and an abuse of discretion. After referring to section 1241, subdivision 2, of the Code of Civil Procedure, the court, in *Chevalier, supra,* held as follows at page 307:

''We therefore hold, despite the implications to the contrary in some of the cases, that the conclusive effect accorded by the Legislature to the condemning body's findings of necessity cannot be affected by allegations that such findings were made as the result of fraud, bad faith, or abuse of discretion. In other words, the questions of the necessity for making a given public improvement, the necessity for adopting a particular plan therefor, or the necessity for taking particular property, rather than other property, for the purpose of accomplishing such public improvement, cannot be made justiciable issues even though fraud, bad faith, or abuse of discretion may be alleged in connection with the condemning body's determination of such necessity. To hold otherwise would not only thwart the legislative purpose in making such determinations conclusive but would open the door to endless litigation,

and perhaps conflicting determinations on the question of 'necessity' in separate condemnation actions brought to obtain the parcels sought to carry out a single public improvement.

We are therefore in accord with the view that where the owner of land sought to be condemned for an established public use is accorded his constitutional right to just compensation for the taking, the condemning body's 'motives or reasons for declaring that it is necessary to take the land are no concern of his.' (*County of Los Angeles* v. *Rindge Co.*, *supra*, 53 Cal.App. 166, 174 [200 P. 27], aff'd *Rindge Co.* v. *County of Los Angeles*, 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186].) Any language in the prior cases implying a contrary rule is hereby disapproved. It follows that there was no error in the trial court's ruling striking the 'special defenses' relating to the question of necessity.''

Appellants cite and rely upon *People* v. *Lagiss*, 160 Cal. App.2d 28 [324 P.2d 926]. This is one of the decisions referred to as follows in *Chevalier* decision, *supra*, at page 305:

''But the cases upon which defendants rely appear to confuse the question of public use with the question of necessity for taking particular property. This is especially true in those instances in which the property owner's contention was that the condemning body was seeking to take more land than it intended to put to a public use.''

*People* v. *Nahabedian*, 171 Cal.App.2d 302 [340 P.2d 1053] and *City of Hawthorne* v. *Peebles*, 166 Cal.App.2d 758 [333 P.2d 442], cited and relied upon by appellants are wholly inapplicable. The *Nahabedian* case deals solely with the issue as to ''public use.'' In *City of Hawthorne* v. *Peebles*, *supra*, the court was dealing with an acquisition of property lying outside the city's boundaries. Code of Civil Procedure, section 1241, subdivision 2, specifically provides that the public body's resolution of necessity is not conclusive when the property lies outside the territorial limits of the condemning agency.

Appellants contend that it is violative of the due process clause of the Fourteenth Amendment of the United States Constitution to give conclusive effect to the resolution with respect to the necessity for the acquisition. This contention is directly contrary to the decision of the United States Supreme Court in *Rindge Co.* v. *County of Los Angeles*, 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186]. (See also *People* v. *Chevalier*, *supra*, at p. 304.)

Finally, appellants contend that the trial court erred in holding that the date of the issuance of the summons

was the proper date of valuation, and in excluding evidence offered by appellant, Shirley Bartlett, relating to the value of the property as of the date of the trial. Section 1249 of the Code of Civil Procedure provides that the measure of compensation shall be the actual value of the property at the date of the issuance of summons except "that in any case in which the issue is not tried within one year after the date of the commencement of the action, unless the delay is caused by the defendant, the compensation and damages shall be deemed to have accrued at the date of the trial. . . ."

In this case the summons was issued on December 12, 1958. The trial commenced on April 21, 1960. Appellants assert that the delay with respect to Shirley Bartlett was solely attributable to the fact that she was not named as a defendant.

In the light of the record, this contention is so plainly without merit that it may fairly be characterized as frivolous. On December 12, 1958, when the summons was issued, and the *lis pendens* was recorded, the record title to the subject property was vested in appellant James S. Bartlett. Appellant Shirley Bartlett was served as Doe I. James Bartlett filed his answer on December 24, 1958, and the case was set for trial on August 4, 1959. At the request of appellant James Bartlett, the trial was continued to August 31, 1959. On August 29, 1959, appellant Shirley Bartlett petitioned for leave to intervene and her answer was filed November 19, 1959. The case was reset for trial on November 17, 1959, but prior to that date appellants again requested a continuance, and respondent stipulated to continue the trial to January 14, 1960, said stipulation providing "that the date of valuation will remain, for all purposes, the date of the issuance of the summons; namely December 12, 1958."

Thereafter, a second pretrial conference was held on November 27, 1959, and a pretrial conference order, dated December 1, 1959, was signed by the court. Said order incorporated by reference the joint pretrial statement dated November 27, 1959, wherein appellants and respondent agreed that "[T]he date of valuation as to the real property described in the complaint shall be December 12, 1958 for all purposes."

It appears that appellants requested and obtained several continuances subject to the understanding and agreement that the date of valuation would remain unchanged. It is fundamental that one who has accepted the benefits of a stipulation is bound by its fair and reasonable provisions. (*Michelin Tire Co.* v. *Coleman & Bentel Co.*, 179 Cal. 598, 603 [178 P. 507].)

"A valid stipulation is, of course, binding upon the parties, and precludes objection to matters concerning procedure and evidence which have been expressly or impliedly agreed upon." (*Sterling Drug, Inc.* v. *Benatar*, 99 Cal.App.2d 393, 400 [221 P.2d 965].)

It is undisputed that appellant Shirley Bartlett had no interest in the land appearing of record when this action was commenced and when the *lis pendens* was recorded. It is admitted that she did not record the deed evidencing her interest until a later date. Section 1214 of the Civil Code provides, in pertinent part: "Every conveyance of real property . . . is void . . . as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action."

It is clear that appellant Shirley Bartlett was required to record her deed in order to make her interest known to the respondent, and that her failure to do so could not operate to the prejudice of respondent. (*Evarts* v. *Jones*, 127 Cal. App.2d 623, 625 [274 P.2d 185].) Under the provisions of section 1246 of the Code of Civil Procedure, appellant Shirley Bartlett clearly had the right to appear, plead and defend, although she was not named as a defendant. Manifestly, the trial court was correct in its conclusion that the delays in the trial of this action were caused by the appellants. (*County of San Mateo* v. *Bartole*, 184 Cal.App.2d 422, 437-438 [7 Cal. Rptr. 569].)

The only decision cited by appellants is *Harrington* v. *Superior Court*, 194 Cal. 185 [228 P. 15]. Obviously, this case is not in point because the problem there presented was the fixing of the date of valuation *where no summons had been issued.*

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.