[Civ. No. 12. Fifth Dist. Dec. 27, 1961.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. RALPH LOGAN et al., Defendants and Respondents.

Robert E. Reed, Holloway Jones, Jack M. Howard, Joseph F. DeMartini, Paul O. Lamphere and Robert J. DeFea for Plaintiff and Appellant.

Crowe, Mitchell, Hurlbutt & Clevenger and J. Thomas Crowe for Defendants and Respondents.

BROWN, J.—The state brought this proceeding in eminent domain to acquire for frontage road purposes along a freeway the fee title to a parcel of real property owned by defendants Ralph Logan and Eunice Putnam Logan, and for the extinguishment of an easement owned by said defendants across adjacent land. The parties have designated the fee sought to be condemned as Parcel 9 and we adopt that designation.

Defendants are the owners of an irregularly shaped parcel of realty containing approximately 1.10 acres, located on the east side of Highway 99, approximately 1¼ miles south of the traffic interchange known as the "Visalia Interchange" and approximately 1 mile north of a proposed traffic interchange to be constructed by the state at Caldwell Avenue in the County of Tulare. The westerly boundary, fronting on Highway 99, is 368.28 feet in length; the north boundary is 234 feet in width; the east boundary is 326 feet in length and the south boundary is 117.5 feet in width. Defendants also own, by virtue of a separate grant, an easement for public road purposes approximately 368.28 feet in length over the westerly 25 feet of neighboring land to the north, containing approximately .221 acres. At the northerly end of the easement an opening located on the west side gives access to Highway 99. This is the only access point in a 2¼ mile stretch on the east side of Highway 99. This access point is shared by defendants and other property owners.

The record discloses that the easement consists of a dirt road. It further shows that Parcel 9 is improved with shrubs, trees and lawn, and that the remaining property of defendants is improved with a single family dwelling, in which defendants reside, an adjoining garage, a rental duplex with a built-in carport and landscaping.

In this action plaintiff seeks to acquire the west 50 feet of defendants' realty, fronting on the highway, containing approximately .423 acres, herein referred to as Parcel 9, and to extinguish the easement and close the access point. Plaintiff also proposes to close an existing opening in the center dividing strip of Highway 99 opposite the access point. The property is being acquired in connection with the construction of Highway 99 freeway and will be used as a frontage road along the east side of the freeway, but having no direct access thereto. The frontage road will commence in the vicinity of Caldwell Avenue, 500 feet east of Highway 99, proceeding thence on a curve in a general northwesterly di-

rection to the highway, thence northerly along the east edge of said highway to a point approximately 368 feet north of Parcel 9 where there will be a cul-de-sac.

Plaintiff's witness Joseph H. Buckle, an engineer for the state, testified that, after completion of the proposed improvement defendants' property would not have direct access to the freeway. In order to reach a point on that freeway directly in front of the property, it will be necessary to travel in a southerly direction over the new frontage road to a point south of Caldwell Avenue, entering the freeway over a right-hand curve, then reverse direction and travel north on the freeway, for a total of 2.48 miles. In order for persons coming from the south to visit defendants' property, it will be necessary to travel in a northerly direction to the Visalia Interchange, approximately 1 mile past the property, then east on state Sign Route 198 to a point near the Visalia Airport, then through an opening in the center dividing strip, then west back to the Visalia Interchange, select the route to Bakersfield, which route includes a loop in a right-hand direction, then south on the freeway for a distance of approximately 2 miles to the Caldwell Avenue Interchange, then east on a ramp which curves up and over the freeway, then in an easterly direction along Caldwell Avenue for several hundred feet, then north on the new frontage road approximately 1 mile to defendants' property; and that the total distance from a point in the northbound lane of the freeway directly in front of defendants' property to the property is 4¾ miles. Other testimony was adduced as to the additional miles of travel which would be required to and from other directions upon completion of the proposed improvement.

Defendants called only one expert witness, George A. Murphy, an experienced and qualified real estate appraiser, who testified that, due to the plan of the proposed construction and the difficulty of ingress and egress caused thereby, the post office refused to deliver mail, and purveyors of milk, bread and other goods refused to make deliveries to defendants' home and to the rental units situated on their property. He further testified that the fair market value of the whole of defendants' property was $23,653.40; the value of Parcel 9 was $1,582, based on $3,600 per acre; the value of the easement, at the same acreage value, was $795.60; there were severance damages in the amount of $17,135; and there were no special benefits.

Plaintiff's expert witness, J. L. Philippe, testified that the fair market value of the entire property was $17,150; the value of Parcel 9 was $725; there were no severance damages; the easement had no value; and there were special benefits of $650.

After trial, the jury returned a verdict of $2,000 for Parcel 9 and the easement, severance damages of $13,000, and no benefits.

Plaintiff appeals and makes five assignments of error, as follows: (1) Error in adopting the unit measure of value for the easement; (2) error in denying plaintiff's motion to strike the testimony of defendants' expert witness; (3) error in the giving of instructions; (4) error in denying plaintiff's motion for a mistrial based on prejudicial misconduct of a juror; and (5) abuse of discretion in denying plaintiff's motion for a jury view.

Plaintiff urges, as grounds for reversal, that the court erred in receiving the testimony of defendants' valuation witness which applied to the easement sought to be extinguished the same acre value which was ascribed to Parcel 9. Plaintiff properly preserved the record by making timely and relevant objections to this evidence.

A long line of cases has held that a property owner abutting upon a public street or highway has a property right in the nature of an easement of ingress and egress to and from his property, and that right cannot be taken from him without just compensation (*Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505]; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]). ▮ The taking of an easement of access to public highways is compensable measured in terms of severance damages, that is, in terms of the diminution in the value of the property which formerly had the easement of access. (*Rose* v. *State, supra; Anderson* v. *State,* 61 Cal.App.2d 140 [142 P.2d 88]; *People* v. *Al G. Smith Co. Ltd.,* 86 Cal.App.2d 308 [194 P.2d 750].)

▮ In the instant case the easement must be considered to be appurtenant to the property in that it provided the only means of access thereto. The defendants could not have used that strip for any purpose inconsistent with the right of other property owners to use it as a means of access to the highway. ▮ The damage for taking an easement appurtenant is measured by the injury to the land to which it is appurtenant (*Olson* v. *United States,* 67 F.2d 24). This

measure of damage is also set forth in 4 Nichols on Eminent Domain (3d ed.) § 12.41, p. 151; and in 1 Orgel, Valuation Under the Law of Eminent Domain (2d ed.) § 111, p. 476, note 36. The portion of the judgment assessing damages for the value of the land taken, including the easement, must be reversed.

Obviously, the easement added to the value not only of the land actually taken but to the value of the land the title to which remained in defendants. ▊ Both the land actually taken and the remaining land were damaged by the taking of the easement, and an element therefor could properly be included in the award for severance damages as well as in the award of damages for the property taken. As above pointed out, one expert witness testified that the value of the land taken was, in his opinion, $1,582, and that the value of the easement on the same acreage basis was $795.60. The other expert witness placed the value of the land taken at $725 and assigned no separate value to the easement. The jury's verdict as to the value of the land actually taken was $2,000; we do not know whether the jury placed a separate value on the easement of $795.60 or some lesser figure, and the judgment will have to be reversed. However, it seems to us that the ascertainment of severance damages by the jury is amply supported by the evidence and that the only improperly resolved question is the award of damages for the actual taking.

Plaintiff next contends that the court erred in denying its motion to strike the testimony of defendants' only valuation witness and in restricting plaintiff's cross-examination. It argues that, in fixing his estimate of severance damages, Mr. Murphy considered the proposed closing of the existing opening in the center dividing strip as a compensable item. ▊▊ It is recognized in this state that, in the proper exercise of its police power in the regulation of traffic on its highways, a state may do many things which are not compensable to an abutting property owner, including placing permanent dividing strips which deprive an abutting owner of direct access to the opposite side of the highway. (*People* v. *Ayon*, 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519]; *Holman* v. *State*, 97 Cal.App.2d 237 [217 P.2d 448]; *People* v. *Sayig*, 101 Cal. App.2d 890 [226 P.2d 702].)

▊▊ Mr. Murphy testified that the closure of the crossover in the center of the highway would render the property more inaccessible. On cross-examination, embracing 11 pages of

the transcript on the single point, he was asked repeatedly whether or not he considered the proposed closing of the crossover in estimating severance damages. In response to such questions, he testified, ''Other than that I don't see the crossover, whether it's there or not, there in the after condition, makes too much difference''; and, ''Q. Well, I had hoped so. Now again did you consider that in arriving at your opinion of value that—did you assume that they had the right to cross over there? A. No, I did not. Q. You did not? A. But the right, the facility was there and they could. Q. Mr. Murphy, did you or did you not consider it? A. I did not, I said''; and, ''Q. And I don't want to bore you with repetitious questions, Mr. Murphy, I say again now, did the fact that this was eliminated (indicating), did that give rise in your opinion to any severance damage? A. None whatever, no.''

Murphy's testimony with reference to the possibility of a closure of the center line of the highway referred only to an element which, in his experience, prospective purchasers of defendants' property would take into consideration. His testimony clearly showed that his estimate of damages was not based partially on the noncompensable item of a closure which he recognized as a possibility. He simply mentioned the possibility as something which a prospective buyer would consider. This is not a case, then, of an expert opinion based partially on a noncompensable item and partially on lawful items. The general rule in condemnation proceedings is that the manner and extent of cross-examination is in the discretion of the court and that in the absence of abuse the rulings will not be disturbed. (17 Cal.Jur.2d, Eminent Domain, § 135, p. 701; *People* v. *McReynolds*, 31 Cal.App.2d 219 [87 P.2d 734].) Obviously, plaintiff was given ample opportunity to cross-examine, and there was no abuse of discretion on the part of the court. The motion to strike was properly denied.

 Plaintiff urges that the court erred in instructing the jury:

''In considering the amount of severance damage, if any, to the remaining property of the defendants, you are to consider that the plaintiff will use the property taken for the most detrimental and injurious use reasonably possible to which it may lawfully be put.''

It is argued that the form of the instruction invited the jury to speculate regarding future damages. There was evi-

dence before the jury that the state had agreed to relinquish the proposed frontage road after completion to the County of Tulare, and there was no assurance at time of trial that the road would thereafter be properly maintained. The agreement was part of the present, existing plan of construction which the jury could properly consider in assessing damage to the land caused by the proposed improvement. In *People ex rel. Dept. of Public Works* v. *Schultz Co.*, 123 Cal.App.2d 925 [268 P.2d 117], the court stated at page 935:

"While it is true that a condemnation award must 'once and for all' fix the damages, present and prospective, that will accrue reasonably from the construction of the improvement, and in this connection must consider the most injurious use of the property reasonably possible [citation], that does not mean that the jury may speculate on the possibility of damage from some future abandonment of the improvement. Remote, speculative, or conjectural elements of damage cannot be submitted to or considered by the jury."

The court correctly instructed the jury that, in assessing severance damages, they "must not consider anything as tending to depreciate such market value, which is uncertain, remote, speculative or imaginary, if any such were testified to by any witness or witnesses." ▆▆▆ As was stated in *Ferguson* v. *Nakahara*, 43 Cal.App.2d 435, 442 [110 P.2d 1091], "All instructions of the court are to be considered and construed as a whole to determine whether they contain reversible error." ▆▆▆ Standing alone, or taken with the instructions as a whole, it does not appear that the instruction of which plaintiff complains contains error. Even assuming error and that the jury did consider whether or not the county would maintain the road, it cannot be said that the error was prejudicial in that the amount awarded for severance damages was within the scope of competent valuation testimony.

▆▆▆ Plaintiff next urges that the court erred in denying its motion for a mistrial based on misconduct of a juror. On *voir dire* Henry P. Taylor, a juror, stated that he had no prejudice or bias regarding the State Division of Highways or freeways. During a recess in the trial, he approached Mr. Buckle, the state's engineer, and remarked, "The only thing I want to know is why a person has to travel so far along a freeway to get off when he only wants to get off to go to a store." Plaintiff then moved for a mistrial on the ground that the juror's remark indicated prejudice and dislike of free-

ways which he had concealed on *voir dire*. The motion was properly denied. The question evidences mere curiosity rather than prejudice.

Plaintiff lastly contends that the denial of its motion for a jury view constituted an abuse of discretion. Section 610 of the Code of Civil Procedure authorizes a view of property which is the subject of litigation when, in the opinion of the court, it is proper. There is a wealth of authority in this state supporting the principle that a jury view is within the sound discretion of the trial court. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493 [225 P.2d 497] ; *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.*, 119 Cal.App.2d 470 [259 P.2d 498].) It is equally well recognized that an appellate court will not reverse a judgment on the basis that the trial court denied a view, unless the record clearly shows an abuse of that discretion (*Nunneley* v. *Edgar Hotel, supra*; *Brown* v. *Lemon Cove Ditch Co.*, 36 Cal.App. 94 [171 P. 705]). In the case under consideration, the record shows that photographs portraying the condition of the property prior to the proposed improvement were received in evidence and deemed sufficient by the court. The record further discloses that, at the time of trial, the construction work was in progress; a fence had been removed; scrapers were constructing a fill immediately in front of the property; and buildings and trees were covered with dust. There is a vast difference in the appearance of improved real property prior to the commencement of construction work immediately adjacent thereto and its appearance during the period of construction. Granting a motion for a jury view might well have been improper and prejudicial to defendants. The court properly exercised its discretion in denying plaintiff's motion.

 The appellate courts have power to order a retrial on a limited issue, if a separate trial may be had thereon without such confusion or uncertainty as would amount to a denial of a fair trial (*Gasoline Products Co.* v. *Champlin Refining Co.*, 283 U.S. 494, 499 [51 S.Ct. 513, 75 L.Ed. 1188]). Whether retrial on a limited issue is proper depends upon the circumstances of the particular case. Assessment of damages in an eminent domain proceeding is governed by section 1248 of the Code of Civil Procedure, which provides that the trier of fact must ascertain and assess the value of the realty and improvements sought to be condemned (Code Civ. Proc., § 1248, subd. 1), and, if the property taken consti-

tutes only a part of a larger parcel, the damages which will accrue by reason of its severance from the part not taken (Code Civ. Proc., § 1248, subd. 2), and "As far as practicable, compensation must be assessed for each source of damages separately" (Code Civ. Proc., § 1248, subd. 7). ▮▮▮ It thus appears that the issue of compensation for land taken is separate and distinct from the issue of severance damages, arising from a separate source. The former is compensation for a taking; the latter, compensation for a damaging. ▮▮▮ The amount of severance damages has been properly determined. Upon a retrial of the issue of damages for the land taken, excluding the easement, it is only necessary for the jury to determine its fair market value. No confusion or uncertainty can arise. That it is proper to order a retrial of a single issue in a condemnation case is enunciated in the case of *People* v. *Ayer,* 33 Cal.App.2d 78 [90 P.2d 819]. (See also *People* v. *Ayer,* 18 Cal.App.2d 755 [64 P.2d 769]; 34 A.L.R.2d 988, 993; *Morris* v. *Standard Oil Co.,* 188 Cal. 468, 474 [205 P. 1073]; *Paul* v. *Williams,* 64 Cal.App.2d 696, 703 [149 P.2d 284].)

In view of the error in adopting the unit measure of valuation for the easement, we conclude that there should be a retrial of the issue of damages for the value of land taken.

The judgment is reversed with directions to the trial court to retry the issue of damages as to the land actually taken and thereafter to make new findings of fact and conclusions of law, incorporating the verdict already rendered by the jury with respect to severance damages and the new verdict of the jury with respect to damages for the land actually taken and enter a judgment thereon. The defendants shall recover their costs of appeal.

Conley, P. J., concurred.

Stone, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied January 24, 1962. Stone, J., deeming himself disqualified, did not participate therein. Appellant's petition for a hearing by the Supreme Court was denied February 21, 1962.