[Civ. No. 20509. First Dist., Div. One. Dec. 6, 1963.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC
 WORKS, Plaintiff and Appellant, v. ANTHONY G.
 LAGISS, Defendant and Appellant.

24

28

Holloway Jones, Jack M. Howard, Joseph F. DeMartini, Harry C. Miller, Robert E. Reed and Harry S. Fenton for Plaintiff and Appellant.

Harlow P. Rothert, Cushing, Cullinan, Hancock & Rothert, Tinning & DeLap and Robert Eshleman for Defendant and Appellant.

MOLINARI, J.—This is an appeal by both parties to this litigation from specified portions of the judgment in an eminent domain proceeding.[1]

### The Record

The present appeal grows out of an earlier appeal in the instant case decided by this court.[2] In order to properly place the appeal now before us in its proper focus it will be necessary to set out a summary of the facts set forth in the previous appeal. These facts give us the background of the case as follows:

After adoption by the California Highway Commission of the resolution of public interest and necessity required by Streets and Highways Code section 102, this action was brought to condemn, for highway purposes, a parcel of land in Contra Costa County belonging to defendant.[3] Defendant answered, denying that the whole of the parcel was needed by plaintiff for highway or any public purpose. Defendant

---

[1]Plaintiff below, the People of the State of California, acting by and through the Department of Public Works, will herein be referred to by the designation, "plaintiff." Defendant, Anthony G. Lagiss, will also be referred to by his designation below, namely, "defendant." The portions of the judgment from which each party appeals will be hereinafter particularly set out.

[2]*People* v. *Lagiss*, 160 Cal.App.2d 28 [324 P.2d 926], hereinafter referred to as "*People* v. *Lagiss*." (Decided May 1958. Petition for hearing denied June 1958.)

[3]Under the Streets and Highways Code the Department of Public Works, hereinafter sometimes referred to as "the Department," cannot commence proceedings in eminent domain unless the California Highway Commission, hereinafter referred to as "the Commission," first adopts a resolution declaring that public interest and necessity require the acquisition, construction or completion by the state, acting through the Department, of the improvement for which the real property is required.

further alleged in his answer, as amended, that the Commission in passing its resolution acted in bad faith and abused its discretion in that it knew or should have known that only a portion of the parcel was needed for any public purpose; that it is apparent from the face of the complaint that only the portion between the highway lines shown on the map was necessary and that there are no plans for or possible use of the remainder of said parcel; that the Commission and the Department had no independent knowledge of the public necessity in acquiring all of said parcel and that its acquisition was for the sole purpose of depriving defendant of compensation justly due him, also to harass him, as plaintiff well knew defendant wished to retain that portion of the parcel not needed for public improvement, and to coerce defendant into accepting a sum for the taking substantially less than the fair market value of the land actually needed for the improvement; and that plaintiff determined to take the property for the purpose of harassing defendant in that plaintiff submitted to defendant a stipulation in which plaintiff would acquire only the portion which defendant claimed was needed for the highway provided defendant would waive any rights to severance damage from the taking of only a portion of the larger parcel. These affirmative allegations of the answer were stricken by the court on motion. The cause thereupon proceeded to trial by jury, and on the first day of the trial leave was granted to defendant to file a third amended answer. This answer contains no allegations of fraud, abuse of discretion or bad faith or that the entire parcel was not needed, other than a denial of the allegations of the complaint. The jury returned a verdict for plaintiff wherein it assessed the damages for the taking at $10,000 for the whole of the parcel sought to be condemned. On an appeal from the judgment entered pursuant to said verdict, this court, in *People* v. *Lagiss*, reversed the judgment on the basis that defendant should have been permitted to present the defense of fraud, bad faith, abuse of discretion and lack of public purpose. The reviewing court also held that in filing the third amended answer containing no allegations of fraud, abuse of discretion or bad faith defendant did not waive his

(§ 102.) The Department, plaintiff herein, is the condemning body for state highway purposes. (§ 102.) The Commission is a part of and an adjunct to the Department (§ 70), and is the quasi-judicial body which determines the matters required to be declared in said resolution. (*People* v. *Olsen*, 109 Cal.App. 523, 530 [293 P. 645].)

right to present these defenses in view of the trial court's previous rulings rejecting these defenses.[4]

On June 16, 1959, the Supreme Court in *People* v. *Chevalier*, 52 Cal.2d 299 [340 P.2d 598], held that the question of "necessity" is not justiciable and disapproved any language in *People* v. *Lagiss* and other cases implying a contrary rule. (Pp. 305, 307.)[5] On June 22, 1959, a pretrial conference was had in the instant action. The pretrial order recites that the issues of public use and necessity having been raised, these issues would be heard by the court sitting without a jury at some time prior to the hearing on the issue of valuation wherein a jury trial was requested. It does not appear from the record whether *Chevalier* was then called to the attention of the court. When the cause came on for retrial on January 19, 1960, the trial court indicated that the questions before it were those of necessity and public use, and while it appears that counsel for both sides acknowledge that these issues were before the court, it also appears that the counsel for plaintiff did, in its opening statement, call the attention of the court to the holding in *Chevalier* to the effect that the question of necessity is not justiciable and that the sole issue before the court was that of public use. It appears, also, that the trial court at that time agreed with plaintiff's statement in this respect. Moreover, in "Findings of Fact and Conclusions of Law"[6] which the court made and signed on August 2, 1960, the trial court recited therein that the matter came on for trial "as to the issue of public use." The record discloses, however, that evidence was taken on the

---

[4]The order of reversal as contained in the opinion reads "The judgment is reversed." (P. 37.)

[5]*Chevalier* held that the condemning body's findings of necessity are not reviewable and cannot be affected by allegations that such findings were made as the result of fraud, bad faith or abuse of discretion. (P. 307.) This holding is predicated upon the provisions of Code of Civil Procedure section 1241 and Streets and Highways Code section 103 wherein it is provided that the condemning body's determination of necessity "shall be conclusive evidence" thereof. *Chevalier* did recognize and hold, however, that fraud, bad faith and abuse of discretion may be shown on the question of "public use." The rationale of *Chevalier* is based upon a recognition of the distinction between the question of public use and the question of necessity. (P. 306.)

The rule announced by *Chevalier* has been followed in *County of San Mateo* v. *Bartole,* 184 Cal. App.2d 422 [7 Cal.Rptr. 569], and *County of Los Angeles* v. *Bartlett,* 203 Cal.App.2d 523 [21 Cal.Rptr. 776].

[6]These "Findings of Fact and Conclusions of Law" were superseded by the "Findings of Fact and Conclusions of Law" made and signed on April 13, 1961.

issue of necessity as well as the issue of public use, and that the trial court made findings of fact on both of these issues. The trial court found: that plaintiff was guilty of bad faith and abuse of discretion in submitting to and having the Commission pass a resolution reciting a need for the whole of the said parcel when it knew that only a portion of said parcel was needed for a public purpose; that plaintiff included the whole parcel knowing that defendant wanted to use said unneeded part; that plaintiff did so to coerce and harass defendant into taking less than the fair market value of the property despite plaintiff's knowing that defendant at all times wanted to use a portion of said property and attached substantial value to it, and despite plaintiff's knowing that no public use was intended to be made of said disputed portion, for highway or drainage or other public purpose whatever; and that no public use is being made or was intended to be made of the contested portion. The court, from said findings, concluded: that no public use attached to the contested portion of defendant's property, and directed that the cause proceed to trial for the determination of the remaining issues; and that at the conclusion thereof defendant was entitled to a judgment quieting title to the said disputed portion together with just compensation for all loss sustained.

Thereafter, plaintiff filed a document entitled "Waiver," in the court below, reciting that plaintiff was desirous of obviating the expense incident to the retrial of the issue of compensation and that it was therefore waiving its right to claim any value for that portion of defendant's property not to be condemned, and that it was conceding, for purposes of the waiver, that the said remaining property be considered to have suffered total damage. The said "Waiver" was conditioned upon the issue of compensation being removed by entry of judgment upon the verdict reached by the jury in the first trial. Plaintiff thereupon moved for entry of judgment in accordance with the tenor of said "Waiver," which motion was granted after a hearing thereon. The trial court thereupon on April 13, 1961, made and filed its "Findings of Fact and Conclusions of Law,"[7] incorporating by reference

---

[7]These findings constitute the actual decision of the court (Code Civ. Proc., § 632), the court having the power to amend or change its findings of fact and conclusions of law at any time prior to the entry of judgment. (*Brownell* v. *Superior Court*, 157 Cal. 703, 708 [109 P. 91]; *Phillips* v. *Phillips*, 41 Cal.2d 869, 874 [264 P.2d 926]; *Wilson* v. *Los Angeles County Employees Assn.*, 127 Cal.App.2d 285, 289 [273 P.2d 824].)

its previous "Findings of Fact and Conclusions of Law" and finding further as follows: that no public use is being made or was intended to be made of other than a portion of the said parcel, which portion it therein particularly described; that only the portion of said parcel thereafter particularly described "is needed" for State highway purposes; that the taking in condemnation of the said portion is and was necessary for a public use; that pursuant to the verdict of the jury therein the value of the whole of the parcel described in plaintiff's complaint is the sum of $10,000; and that in view of plaintiff's waiver on file conceding that the portion not to be condemned may be considered to have suffered total damage, the court took judicial notice of and found that the portion condemned, being a part of the whole parcel found by the jury to be of the value of $10,000, together with maximum severance damages, cannot exceed the value of the whole of said parcel. The trial court thereupon concluded: that the portion decreed to be taken be condemned in fee absolute for highway purposes; that defendant have judgment in the sum of $10,000 for the property taken and for severance damages as to the portion not taken; that no public use attached to other than the portion of the parcel condemned; and that defendant's title to the portion not condemned be quieted. Judgment pursuant to said "Findings of Fact and Conclusions of Law" was thereupon entered. Each of the parties has appealed from a portion of the judgment: plaintiff, from that portion which fails to adjudge condemnation of the whole of the parcel and that portion which quiets title to the portion refused condemnation; defendant, from the portion thereof awarding compensation.

### The Issue of Public Necessity

As we have hereinbefore indicated, *People* v. *Chevalier*, *supra*, 52 Cal.2d 299, unequivocally holds that the issue of necessity is not justiciable. The Supreme Court there noted that the only limitations placed upon the right of eminent domain by the California Constitution (art. I, § 14), and the United States Constitution (Fourteenth Amendment) are that the taking be for "a 'public use'" and that "'just compensation'" be paid for such taking. (P. 304.) "Each of these limitations," said the Supreme Court, "creates a justiciable issue in eminent domain proceedings. But 'all other questions involved in the taking of private property are of a legislative nature.'" (P. 304; citing *Uni-*

*versity of So. California* v. *Robbins,* 1 Cal.App.2d 523, 525 [37 P.2d 163].) The reviewing court, in *Chevalier,* directed attention to the provisions of Code of Civil Procedure section 1241 and Streets and Highways Code section 103 declaring that the resolution of the condemning body finding public necessity is conclusive evidence thereof, and cited *Rindge Co.* v. *County of Los Angeles,* 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186], upholding the constitutionality of this conclusive presumption. In *Rindge Co.,* the United States Supreme Court said: "That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. ... The question is purely political, does not require a hearing, and is not the subject of judicial inquiry." (P. 709 [67 L.Ed. p. 1193].) It was error, therefore, for the trial court in the present case to have received evidence and to make findings thereon on the issue of public necessity.[8] *Chevalier* points out that the question of public use is often confused with the question of necessity, particularly in those instances, in which the property owner contends that the condemning body is seeking to take more land than it intends to put to a public use. The crux of the question in the instant case, however, is whether the taking is for a public use and whether the condemnor is guilty of fraud, bad faith or abuse of discretion in the sense that it does not actually intend to use the property as it resolved to use it. Before turning to this question we must first dispose of defendant's contention that *People* v. *Lagiss* is the "law of the case."

As stated by Witkin: "The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent

---

[8]There is ample evidence to sustain a finding that the disputed portion of the parcel sought to be condemned was not "needed" for the use resolved were such issue justiciable. We need not reiterate such evidence here. Suffice it to say, there was substantial evidence that several of plaintiff's agents, acting within the scope of their authority, made representations to defendant, prior to the adoption of the resolution declaring that it was necessary to take the whole parcel, that such disputed portion was not necessary for highway purposes and that if defendant would waive severance damages to the portion not condemned the condemning body would not include such portion in its said resolution.

retrial or appeal in the same case.'' (3 Witkin, Cal. Procedure, § 210, p. 2419; citing *Tally* v. *Ganahl*, 151 Cal. 418, 421 [90 P. 1049], and other cases.) ▮ It appears from the late California decisions that this doctrine is one of policy only and that it will be disregarded when compelling circumstances call for a redetermination of the determination of the point of law on a prior appeal. (*England* v. *Hospital of Good Samaritan*, 14 Cal.2d 791, 795 [97 P.2d 813]; *Vangel* v. *Vangel*, 45 Cal.2d 804, 810 [291 P.2d 25, 55 A.L.R.2d 1385]; *Wicktor* v. *County of Los Angeles*, 177 Cal.App.2d 390, 396 [2 Cal.Rptr. 352]; see 3 Witkin, Cal. Procedure, § 211, pp. 2421-2422.) This is particularly true where an intervening or contemporaneous change in the law has occurred by the overruling of former decisions or the establishment of new precedent by controlling authority. (*Standard Oil Co.* v. *Johnson*, 56 Cal.App.2d 411, 415-416 [132 P.2d 910]; *England* v. *Hospital of Good Samaritan, supra,* p. 795; *Gore* v. *Bingaman,* 20 Cal.2d 118, 122-123 [124 P.2d 17]; *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 53 Cal.2d 392, 395 [1 Cal.Rptr. 833, 348 P.2d 193]; see *Wicktor* v. *County of Los Angeles, supra,* at pp.397-404; and see 3 Witkin, Cal. Procedure, §217, p. 2430.) In the present case the trial court applied the law declared in *People* v. *Lagiss* to the effect that the condemning body's findings of necessity are reviewable in condemnation actions when facts establishing fraud, bad faith or abuse of discretion are affirmatively pleaded, although *Chevalier* had intervened as a precedent declaring that such finding was not justiciable even though fraud, bad faith or abuse of discretion may be alleged in connection with the condemning body's determination of such necessity. The clarification of the principles stated in *Chevalier* on the issue of public necessity made after our decision in *People* v. *Lagiss,* impels us to depart from the doctrine of ''the law of the case'' because adherence thereto would amount to the use of the doctrine, as an instrument of injustice upon plaintiff. Accordingly, we do not hesitate to reconsider our prior determination in the light of the controlling rule stated in the *Chevalier* case.

### The Issue of Public Use

▮ The complaint in the present case sets forth *in haec verba* the resolution of the Commission stating public interest and necessity with respect to the acquisition of the parcel in question *''for State highway purposes. . . .''* (Italics added.) ▮ The taking of property for use as a public highway is

a purpose authorized by Code of Civil Procedure section 1238, subdivision 3, and is clearly for an established public use. (See *People* v. *Chevalier, supra,* at p. 304; *County of San Mateo* v. *Coburn,* 130 Cal. 631, 635 [63 P. 78, 621].) This resolution was offered in evidence by plaintiff at the commencement of the trial and was admitted in evidence without objection. ▮ Such a resolution is prima facie evidence that the taking is in fact for a public purpose (*County of San Mateo* v. *Bartole,* 184 Cal.App.2d 422, 432 [7 Cal.Rptr. 569]); and the determination therein that the taking is for a public purpose, declared proper for eminent domain proceedings by the state, may not be disputed in the absence of fraud, bad faith, or abuse of discretion on the part of the condemning body. (*People* v. *Chevalier, supra,* at p. 304; *County of San Mateo* v. *Bartole, supra,* p. 433; *People* v. *Milton,* 35 Cal.App.2d 549, 552 [96 P.2d 159]; *People* v. *Olsen,* 109 Cal.App. 523, 531 [293 P. 645]; and *Rindge Co.* v. *County of Los Angeles, supra,* 262 U.S. 700.) ▮ The issues of fraud, bad faith or abuse of discretion must, however, be affirmatively framed or raised by appropriate and adequate pleadings. (*People* v. *Chevalier, supra;* *County of San Mateo* v. *Bartole, supra;* *People* v. *Milton, supra;* *People* v. *Olsen, supra;* *County of Los Angeles* v. *Bartlett,* 203 Cal. App.2d 523, 531 [21 Cal.Rptr. 776]; *People* v. *Lagiss, supra,* at p. 33; *People* ex rel. *Dept. Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925, 941 [268 P.2d 117]; *People* v. *Thomas,* 108 Cal.App.2d 832, 836 [239 P.2d 914].) Accordingly, it has been held that a general denial in the answer to the allegations contained in the plaintiff's complaint does not constitute a denial that the land was intended to be used for a public purpose. (*People* v. *Milton, supra; People* v. *Olsen, supra,* (cited with approval by *People* v. *Chevalier, supra,* at p. 306).) It is established by the above cases, therefore, that unless the issues of fraud, bad faith or abuse of discretion are affirmatively alleged, the resolution of the Commission is *conclusive* of the finding that the taking is for the public purpose therein specified. We thus have the conclusiveness as to public necessity afforded by the statutes, and a conclusiveness as to public use declared by judicial decisions. ▮ Where such issues are appropriately and affirmatively pleaded, however, the determination as to public use is not conclusive, but merely prima facie evidence that the taking is in fact for a public purpose. (*People* v. *Bartole, supra,* at p. 432, citing Code Civ. Proc., § 1963, subd. 15; and *Lavine* v.

*Jessup*, 161 Cal.App.2d 59, 67 [326 P.2d 238], to the effect that the actions of public bodies, acting within the powers vested in them, are presumed to be proper.)

█ In the case at bench defendant did not plead the defense of fraud, bad faith or abuse of discretion in his third amended answer. This answer was merely a general denial of the allegations of the complaint and therefore would not, under the authorities above alluded to, raise these defenses. As we have indicated above, however, it was held in *People* v. *Lagiss* that these defenses had not been waived in view of the repeated attemps made by defendant to plead them. It appears, moreover, that although no attempt was made to amend the answer to plead such defenses prior to the retrial of the instant case, it is clear that counsel for the respective parties and the trial court considered the holding in *People* v. *Lagiss* to be the "law of the case." Accordingly, the cause was tried upon the theory that the affirmative defenses of bad faith and abuse of discretion were before the court.[9] █
It was proper for the trial court, furthermore, to consider these defenses relative to the issue of public use pursuant to the time-honored rule that where the parties and the court proceed throughout the trial upon a theory that a certain issue is presented for adjudiciation, the doctrine of estoppel precludes either party from thereafter asserting that no such issue was in controversy, even though it was not actually raised by the pleadings. (*Miller* v. *Peters*, 37 Cal.2d 89, 93 [230 P.2d 803]; *People* v. *Nahabedian*, 171 Cal.App.2d 302, 306 [340 P.2d 1053]; *People* v. *Lucas*, 155 Cal.App.2d 1, 5 [317 P.2d 104].)

█ In the case at bench we thus have a prima facie case established by plaintiff that the taking of the entire parcel in question was for a public use. It was therefore incumbent upon defendant to overcome this prima facie showing by establishing either or both of his affirmative defenses of bad faith and abuse of discretion by a preponderance of the evidence, the burden of proof as to such defenses being upon him. (Code Civ. Proc., §§ 1869, 1981; Witkin, Cal. Evidence,

---

[9]The answers containing defendant's said affirmative defenses which were striken and rejected by the trial court prior to the first trial were not included in the clerk's transcript on appeal. These defenses are, however, set out in *People* v. *Lagiss*. They do not include fraud, but they do include bad faith and abuse of discretion. The facts alleged to constitute bad faith and abuse of discretion have been hereinabove set out in the narrative of the record in the present case.

§ 56, pp. 72-73.) In attempting to establish his claim of bad faith and abuse of discretion defendant directed most of the evidence adduced by him towards proof of the fact that plaintiff did not *need* the disputed portion for highway purposes. It is defendant's claim that plaintiff was guilty of bad faith and abuse of discretion in its attempt to secure from him a waiver of severance damages in exchange for an agreement on the part of plaintiff not to take the disputed portion. Such conduct, contends defendant, amounts to a coercion to compel a settlement on plaintiff's terms. Accordingly, it is defendant's theory that because plaintiff does not need the entire parcel for highway purposes the use of the portion not needed is not for a public purpose. In support of this thesis the contention is made that if bad faith or abuse of discretion is shown with respect to the Commission's determination of necessity such showing inheres in the finding of public use.

This argument is not tenable because, as determined by *Chevalier*, the questions of necessity for making a given public improvement, the necessity for adopting a particular plan therefor, or the necessity of taking particular property for the purposes of accomplishing such public improvement, cannot be made justiciable issues even though bad faith or abuse of discretion might be shown with respect to the condemning body's determination of such necessity. (See *People* v. *Chevalier, supra*, at p. 307.) As pointed out, in *Chevalier*, the motives or reasons for declaring that it is necessary to take land are no concern of the owner of land sought to be condemned by the state for a use declared by law to be a public use. (P. 307; citing *County of Los Angeles* v. *Rindge Co.*, 53 Cal.App. 166, 174 [200 P. 27]; see *County of Los Angeles* v. *Bartlett, supra*, 203 Cal.App.2d 523, 533.)

The trial court permitted both parties the widest latitude in offering evidence for the purpose of showing whether the disputed portion was necessary for highway purposes. Accordingly, most of defendant's evidence was directed towards the proof that plaintiff was seeking to acquire land in *excess* of that necessary for the designated purpose. It appears, therefore, that to a considerable degree the trial court and respective counsel confused ''necessity'' with ''public use.'' The character of the use, and not its extent, determines the question of public use. (*Stratford Irr. Dist.* v. *Empire Water Co.*, 44 Cal.App.2d 61, 67 [111 P.2d 957].) It is necessary, therefore, to distinguish between the amount of land and the necessity for its condemnation, as contrasted

with the proposed purpose for which it is to be used. 
The necessity for the construction of a highway at the place designated and in the manner determined by the Commission, together with the amount of land required therefor, are matters which were conclusively established by the adoption of the resolution. The question as to whether the land was to be devoted to a public use, however, as distinguished from private purposes or to accomplish some purpose which is not public in character, became a proper issue for the judicial determination of the court. (*People* v. *Nahabedian, supra,* 171 Cal.App.2d 302, 308; *County of San Mateo* v. *Coburn, supra,* 130 Cal. 631, 634.)

The nub of the inquiry is whether defendant has affirmatively established bad faith or abuse of discretion in the sense that the condemnor does not actually intend to use the property as it resolved to use it. Stated another way, it was proper for defendant to introduce relevant evidence tending to show the "real purpose" of the condemnation proceedings, i.e., whether it was plaintiff's "real purpose" to take part of defendant's property, not for highway purposes, but for private purposes or a public purpose not related to the highway project. Our attention, then, is directed to ascertaining whether there is any substantial evidence in the record which will support a finding that plaintiff does not intend to use the disputed portion for highway purposes.

 The evidence in the present case pertaining to the events leading up to the adoption of the resolution discloses the following: plaintiff originally intended to take the entire parcel for highway purposes; during the course of negotiations for purchase of the parcel defendant evinced a desire to retain a portion of the parcel; this portion was not to be used for the highway itself but had utility related to the highway in that it made for a better appearance, increased the sight distance, and improved drainage conditions; plaintiff's engineers concluded that they could construct the proposed highway without the portion which defendant desired to retain; plaintiff prepared a written stipulation to the effect that it would not take said portion if defendant would waive severance damages; defendant refused to sign the stipulation; plaintiff thereupon recommended to the Commission that it determine to take the whole parcel; that if defendant had agreed to waive severance damages the recommendation would have been made by plaintiff to the Commission to exclude the dis-

puted portion from the condemnation proceedings.[10] This evidence in and of itself would not support a finding that the disputed portion was not taken for a public use. At best it establishes that plaintiff was taking more land than it needed for a public purpose. Such necessity is not justiciable, even if the motive of plaintiff was to take more land than it needed in order to avoid severance damages.

The record discloses, further, that the Commission adopted the resolution upon the recommendation made by the plaintiff Department that the entire parcel was needed for a public use. Considerable evidence was also adduced as to whether the disputed portion was needed for sight distance. Here again the parties were litigating necessity. ▮ The fact that plaintiff was utilizing more land for sight distance than was needed for highway purposes does not militate against its public use as long as it was in fact used for sight distance purposes. ▮ The evidence is also clear that the subject highway had been completed at the time of trial, and that the disputed portion was then being utilized for sight distance, thus contributing to highway safety, and that it was useful to the highway from the standpoint of drainage, slope and appearance. These factors of utility are related to the highway project and are, therefore, consistent with public use.

Defendant asserts that there is significant testimony in the record from which the trial court was entitled to infer that plaintiff did not, and does not, intend to use the disputed portion for the highway purposes resolved by the Commission. The basis of defendant's assertion is that plaintiff did not intend to devote the disputed portion to highway purposes when it made its recommendation to the Commission, but that it intended to turn it over to the County of Contra Costa for whatever use it might wish to put it, or that it intended to sell it to the cemetery for a private use. ▮ It

---

[10]It appears that during the negotiations for acquisition certain of plaintiff's agents and employees characterized the acquirement as one involving considerations applicable to Streets and Highways Code section 104.1. This section provides: ''Wherever a part of a parcel of land is to be taken for State highway purposes and the remainder is to be left in such shape or condition as to be of little value to its owner, or to give rise to claims or litigation concerning severance or other damage, the department may acquire the whole parcel and may sell the remainder or may exchange the same for other property needed for State highway purposes.'' Plaintiff does not assert or contend that the property involved in the instant action was acquired pursuant to the provisions of this section.

is, of course, a fundamental principle of eminent domain law that the taking for a private purpose is without authority in law as violative of the California and federal Constitutions which prohibit the taking of the property of a citizen for private use. (U.S. Const., Fifth and Fourteenth Amends.; Cal. Const., art. I, § 14; *People* v. *Chevalier, supra,* 52 Cal.2d 299, 304; *People* v. *Nahabedian, supra,* 171 Cal. App.2d 302, 308.) The testimony relied upon is that of plaintiff's Metropolitan District Right of Way Agent, Daniels, who, while under cross-examination by defendant's counsel, was asked the following question: "... And the intention is to treat this remainder as excess property when the litigation is settled or determined, as indicated in Defendant's Exhibit 8 in evidence?"[11] His answer was: "The intent was here that he should take no action until after this litigation was settled. After that time, we'd have the decision to make as to whether to turn it over to the county or sell it perhaps to the cemetery people with restrictions against placing improvements on it."

There is ample evidence in the record to indicate that the disputed portion was considered excess property by plaintiff and that the same was acquired in order to avoid severance damages. However, as we have pointed out above, the condemning body may acquire land in excess of that necessary for the designated purpose. The inquiry before us, however, is not whether plaintiff acquired excess property, but whether such property was acquired by the condemnor with the intent of not putting it to a public use. There is nothing in the record to indicate that at the time the resolution for the acquisition of the subject property was adopted the Commission harbored or entertained an intention to put such excess property to a purpose other than one related to the highway project. Daniels testified specifically with reference to the memorandum from Gibbons to Moore, an interoffice communication which was made subsequent to the first trial herein and prior to the commencement of the proceedings herein under review. This memorandum is clearly a reminder to

---

[11]Defendant's Exhibit 8 is a Division of Highways interoffice memorandum from Fred O. Gibbons, Senior Right of Way Agent, to Thomas Moore (identified as "head" of excess land division) which reads as follows: "The trial of the subject action was appealed by the defendant, and it has been sent back to the lower court. Therefore, the remainder of the subject property should not be considered as excess until the legal issue*d* involved have been finally settled. It is anticipated that this will require a period of several months at least."

Moore that because of the pending litigation the disputed portion should not be considered excess until such litigation was finally settled. It should be here noted that plaintiff is empowered and authorized to sell or exchange any property, or interest therein, acquired for highway purposes when such property is *no longer necessary for such purposes* upon terms and conditions *approved* by the Commission. (Sts. & Hy. Code, § 118.) Daniels' interpretation of the subject communication was that Moore should take no action until the litigation was settled, and that "After that time, *we'd* have the decision to make as to whether to turn it over to the county [12] or sell it *perhaps* to the cemetery people *with restrictions against placing improvements on it.*" (Italics added.) This statement was, at best, speculative on the witness' part and, clearly, had reference to action that might or could be taken in the future. The record is void of any evidence that the disputed property was declared excess by the Commission pursuant to section 118 of the Streets and Highways Code, or that such property was in fact relinquished to the county by resolution as provided in section 73 of said code. ■■■ It should be further noted, moreover, that when property is relinquished under section 73 it is not relinquished for a private purpose, but only for a public use, i.e., as a county road. Furthermore, the record is barren of any evidence that the suggestion made by Daniels concerning a sale to the cemetery is in the contemplation of the Commission or that such sale has been authorized by the express resolution of such body.

■■■ Assuming, *arguendo*, that Daniels' said testimony and the memorandum in question are susceptible of the inference that plaintiff and the Commission, or either of them, did not, at the time of the acquisition of the disputed property or of the adoption of the resolution therefor, intend to use the disputed portion for the highway purposes resolved

---

12§ 73 of the Sts. & Hy. Code provides, in pertinent part, as follows: "Whenever the department and the county ... concerned have entered into an agreement providing therefor, or the legislative body of such county ... has adopted a resolution consenting thereto, the commission may relinquish, to any such county ... , any frontage or service road or outer highway, within the territorial limits of such county ..., which has a right-of-way of at least forty (40) feet in width and which has been constructed as a part of a state highway or freeway project, but does not constitute a part of the main traveled roadway thereof.... Relinquishment shall be by resolution ... and such highway or portion thereof shall thereupon constitute a county road...."

by the Commission, but to put it to a private use, such inference is of no avail to defendant because it will not serve to establish bad faith or abuse of discretion on the part of plaintiff or the Commission. Under the facts of the instant case any such intent, if it did in fact exist, was proper and legal within the meaning and applicability of section 104.3 of the Streets and Highways Code. This section provides that ''[t]he department may condemn real property ... for reservations in and about and along and leading to any State highway or other public work or improvement constructed or to be constructed by the department and may, after the establishment, laying out and completion of such improvement, convey out [*sic*] any such real property ... thus acquired and not necessary for such improvement with reservations concerning the future use and occupation of such real property ... , so as to protect such public work and improvement and its environs and to preserve the view, appearance, light, air and usefulness of such public work; provided, that land so condemned ... shall be limited to parcels lying wholly or in part within a distance of not to exceed one hundred fifty feet from the closest boundary of such public work or improvement; provided that when parcels which lie only partially within such limit of one hundred fifty feet are taken, only such portions may be condemned which do not exceed two hundred feet from said closest boundary.'' ██ As we interpret this section, it permits the Department to condemn more land than is necessary for a public use within the limitations therein specified, and upon completion of the highway or public improvement, authorized the Department to convey the excess land not necessary for such highway or improvement with reservations concerning the use of such land, so conveyed, so as to protect the highway or improvement, and to preserve its view, appearance, light, air and usefulness. In the case at bench, the record discloses that the disputed or ''excess'' portion lies wholly within 150 feet of the closest boundary of the highway project for which defendant's entire parcel was condemned. It is obvious, moreover, that when Daniels made reference to a conveyance of the disputed portion to the cemetery ''with restrictions against placing improvements on it,'' he was speaking in terms of the conveyance and reservations provided for in section 104.3. We conclude, accordingly, that the propriety of acquiring land in excess of that actually needed for the public purpose resolved by the Commission with the intent to

dispose of the land not actually needed or used for such purpose, after the completion of the improvement, finds sanction in section 104.3, provided that such excess land is within the distance therein prescribed, and, provided further, that any such conveyance is made with reservations concerning the future use and occupation of such land so as to protect the public improvement as in said section provided. (Cf. *Baker* v. *City of Palo Alto*, 190 Cal.App.2d 744, 754 [12 Cal.Rptr. 425].)

### The Issue of Compensation

On the previous appeal in *People* v. *Lagiss*, the court reversed the judgment, based upon a jury verdict, condemning the whole of defendant's property for $10,000. The order for reversal was without qualification, although the basis for the reversal was error in striking defendant's affirmative allegations of bad faith and abuse of discretion.[13] As we have hereinabove indicated, the trial court concluded in the present proceeding, after making the finding that only a portion of the parcel was subject to condemnation and in view of plaintiff's waiver after such finding, that the amount of $10,000 fixed by the jury at the first trial as the value of the entire parcel constituted the total damages sustained by defendant because the value of the portion taken for highway purposes and the maximum severance damages to the area not taken cannot exceed the value of the whole of said parcel.

It is the general rule that an unqualified reversal remands the case for a new trial and sets at large for readjudication all issues involved in the case. (*De Hart* v. *Allen*, 26 Cal.2d 829, 833 [161 P.2d 453]; *Monson* v. *Fischer*, 219 Cal. 290, 291 [26 P.2d 6]; *Weightman* v. *Hadley*, 138 Cal.App.2d 831, 835 [292 P.2d 909]; *Hall* v. *Superior Court*, 45 Cal.2d 377, 381 [289 P.2d 431]; *DeMirjian* v. *Ideal Heating Corp.*, 129 Cal.App.2d 758, 764 [278 P.2d 114].) The effect of such a reversal is to restore the parties to the same position as if the action had never been tried. (*Hall* v. *Superior Court, supra*, p. 381; *Weightman* v. *Hadley, supra*, at p. 836; *Steen* v. *City of Los Angeles*, 31 Cal.2d 542, 547 [190 P.2d 937].) Accordingly the original judgment ceases to exist for any purpose and it cannot be modified (*Cowdery* v. *London etc. Bank*, 139 Cal. 298, 303, 307 [73 P. 196, 96 Am.St.Rep. 115]); nor are the findings at the first trial of any effect (*DeMirjian* v. *Ideal Heating Corp.*,

---

[13]Defendant did not assert any error on appeal as to the issue of compensation.

150 Cal.App.2d 540, 545 [310 P.2d 488]); nor can the trial court make findings based on evidence taken at the first trial. (*Hall* v. *Superior Court, supra,* at p. 381; *Heinfelt* v. *Arth,* 4 Cal.App.2d 381, 384 [41 P.2d 191].) Plaintiff concedes that these general principles are declarative of the general rule, but asserts that a different rule ought to be here invoked in view of the unique nature of an eminent domain proceeding and in the interests of justice.

■ It should be first noted that in an eminent domain proceeding the sole question for the jury is that of compensation. Every other question is for the court. ■ The jury's verdict is adopted by the court in its findings of fact and conclusions of law (*People* v. *Ricciardi,* 23 Cal.2d 390, 402 [144 P.2d 799]); and judgment is then entered on the court's findings and conclusions, and not on the verdict. (*City of Los Angeles* v. *Cole,* 28 Cal.2d 509, 512 [170 P.2d 928]; *People* v. *Broome,* 120 Cal.App. 267, 270 [7 P.2d 757].) It is clear, therefore, that the jury's determination as to compensation becomes a finding made by the judge. It is equally clear, then, that an unqualified reversal annuls the findings of the trial court including such findings as to compensation which the jury may have determined.

■ We apprehend no rule which requires us to consider a condemnation case in a different light than other cases. The important question is not whether the case is one in condemnation, but whether it was the intent in *People* v. *Lagiss* to reverse the judgment without qualification, or whether the order of reversal therein may be interpreted to mean that it was directed to a limited, severable portion of the case. (*People* ex rel. *Dept. of Public Works* v. *Mascotti,* 206 Cal.App.2d 772, 778 [23 Cal.Rptr. 846, 24 Cal.Rptr. 679].) ■ Severability exists only when the portion which has been selected for appeal can be reversed without affecting other portions of the judgment. (*American Enterprises, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 216 [246 P.2d 935]; *People* ex rel. *Dept. of Public Works* v. *Mascotti, supra,* at p. 777.) ■ ''The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked.'' (*American Enterprise, Inc.* v. *Van Winkle, supra,* at p. 217; *People* ex rel. *Dept. of Public Works* v. *Mascotti, supra,* at p.

777.) In *Mascotti*, a condemnation case, the situation was almost similar to the one here. There the judge found for the plaintiff on the issue of public use and a jury thereafter assessed the award of compensation. The plaintiff condemnor moved for a new trial. The motion was directed to the issue of compensation and was predicated upon the basis that an improper valuation date had been applied. The trial court granted the motion upon " 'the grounds of insufficiency of the evidence to sustain the verdict.' " (P. 776.) The cause was then retried upon the limited issue of compensation. An appeal was then taken from the ensuing judgment by the defendant who urged upon the reviewing court that on the retrial the trial court should have also considered the issue of public use because of the order granting a new trial. The respondent contended that the issue was limited to compensation because its own motion for a new trial was only directed to that issue and therefore the trial court was limited to the scope of the motion. The appellate court agreed with the respondent upon the rationale that in view of the trial judge's finding that *all* of the appellant's property was being taken for a public use the question of compensation became a severable one for the jury's consideration "just like the issues of liability and damages in the ordinary personal injury case." (P. 778.) The important distinction between *Mascotti* and the case at bench, however, lies in the finding of the trial court as to public use. In *Mascotti* the trial court found that *all* of the property was taken for a public use; in the present case only a *portion* was found necessary for such use.

▮ In the prior appeal in this case defendant appealed from the entire judgment. While the appeal was directed solely to the issue of public use and necessity this issue was necessarily interwoven with the question of compensation. It was defendant's contention on appeal that he should have been permitted to show that only a portion of the parcel was needed for a public purpose. The trial court had determined that the entire parcel was needed for a public use. Accordingly the jury in the first trial was called upon to determine only the value of the entire parcel. It is clear that if defendant was entitled to prevail on his affirmative defense upon the retrial, the jury would be called upon to determine only the value of the portion condemned. The jury would also be called upon to determine the amount of severance damages, if any, sustained by the portion not condemned. (Code Civ.

Proc., § 1248, subd. 2.) ▓▓ The issue of compensation for land taken is separate and distinct from severance damages. The former is compensation for a taking; the latter compensation for a damaging. (*People* ex rel. *Dept. of Public Works* v. *Logan,* 198 Cal.App.2d 581, 591 [17 Cal.Rptr. 674]; see also *People* v. *Symons,* 54 Cal.2d 855, 860 [9 Cal.Rptr. 363, 357 P.2d 451].) Code of Civil Procedure section 1248, subdivision 7, requires severance damages to be assessed separately. Moreover, section 1248 requires that where the property sought to be condemned is part of a larger parcel there must be a determination of how much the remaining portion will be benefited, if at all, by the construction of the improvement proposed by the condemner, and this benefit, if any, must also be assessed separately. (Subd. 3.) This latter subdivision has been interpreted to apply to special benefits, which directly enhance the value of the property after condemnation, rather than general benefits which accrue to the entire neighborhood or community. (*City of Hayward* v. *Unger,* 194 Cal.App.2d 516, 518 [15 Cal.Rptr. 301].) ▓▓ When such special benefits are found the condemning body is entitled to have the severance damages reduced or offset by such special benefits. (*City of Hayward* v. *Unger, supra.*)

▓▓ Upon the retrial, then, the jury would have been called upon to determine, in the event the trial court should determine that plaintiff was entitled to condemn only a portion of the parcel, whether defendant was entitled to severance damages, and, if so, whether such damages should be offset by special benefits. On the other hand, if the trial court, upon a retrial, found that the whole parcel was necessary for a public use, the jury would not be concerned with severance damages but with the value of the entire parcel. The case having thus been set at large, plaintiff could not elect by the waiver to revive a finding of valuation which was annulled and set aside, and in which waiver defendant did not join. Accordingly, defendant, having been successful in setting the case at large, was entitled to relitigate the issue of compensation for better or worse. The incongruity of plaintiff's position is demonstrated by its willingness that the damages assessed in the first trial, on the basis of the valuation of the entire parcel, be deemed to be the damages in the instant trial upon the basis of damages both for the taking and for the severance, while at the same time contending on this appeal that it was entitled, as we agree, to an adjudication that the entire parcel was necessary for a public use.

Plaintiff relies essentially upon *Whalen* v. *Smith*, 163 Cal. 360 [125 P. 904, Ann.Cas. 1913E 1319]; *Lake* v. *Superior Court*, 187 Cal. 116 [200 P. 1041]; *People* v. *Ayer*, 33 Cal. App.2d 78 [90 P.2d 819] and *Burgermeister Brewing Corp.* v. *Superior Court*, 195 Cal.App.2d 368 [15 Cal.Rptr. 751]. A perusal of these cases readily discloses that the issue involved on appeal was severable. In *Whalen* and *Lake* the appeal was a partial one from the determination of certain issues and not from others. It was held in each case, by the reviewing court, that the broad expression "judgment is reversed" will be confined to the issues arising upon appeal. In *Ayer*, a condemnation case, the issue on appeal was the single issue of ownership. The order of reversal there specifically stated prior to the expression " 'The judgment is reversed,' " that " 'the cause should be returned for further inquiry upon this issue.' " (I.e., the issue of ownership.) *Ayer*, therefore, provided specifically for a limited reversal. (See *People* ex rel. *Dept. of Public Works* v. *Logan*, 198 Cal.App.2d 581 [17 Cal.Rptr. 674], which cites the *Ayer* case as authority for the proposition that it is proper to order a retrial on a single issue in a condemnation case so as to avoid the effect of an unqualified reversal.) In *Burgermeister Brewing Corp.* the cross-complainant sued on counts in contract and in fraud. He prevailed on the contract counts but not on the fraud counts. The cross-defendant appealed from the "whole judgment" and the judgment was reversed. Prohibition thereafter issued restraining the trial court from retrying the fraud counts. The rationale of the reviewing court was that although the cross-defendant appealed from the "whole judgment" it was only appealing from the judgment on the contract counts and not that portion of the judgment in its favor on the fraud counts. The court's holding was based on the severability of the contract counts from the fraud counts and upon the fact that the cross-complainant himself had not appealed from that part of the judgment denying him relief on the fraud counts.

We must assume, unless otherwise indicated, that this court, in *People* v. *Lagiss* intended to set the case "at large" in view of its unqualified reversal, because the reversal of the whole judgment was essential to protect the interests of defendant-appellant. Upon the decision of an appellate court that there was material error in the action of the court below the reviewing court may correct the character of the subsequent proceedings in the lower court

and its mandate will vary according to its views as to the proper course to be pursued. (*Cowdery* v. *London etc. Bank, supra,* 139 Cal. 298, 303.) ▪ As said in *Cowdery*: "It [the appellate court] may conclude not to reverse the judgment, but to modify it, by eliminating some portion, or by adding something to it, leaving the remaining part of the judgment below to stand affirmed and in full force and effect from the date of its original entry or rendition; or it may reverse the judgment, which means to entirely vacate it, and may remand the cause for a new trial; or if a new trial is not necessary, it may upon the reversal remand it, with directions to the lower court to enter a particular judgment." (P. 303.) ▪ It appears, moreover, that the question of unqualified reversal was called to the attention and considered by both the appellate court and the Supreme Court on the first appeal in this case. We take judicial notice that in the petition for rehearing in this court and in a petition for hearing by the Supreme Court plaintiff there asked for a limited reversal with directions to try only the issue of "public necessity." The fact that these requests were not granted indicates that both of the reviewing tribunals were of the opinion that an unqualified reversal should be ordered. ▪ It should also be noted that at the pretrial conference made prior to the retrial, compensation was delineated as one of the issues to be tried. It does not appear that plaintiff objected to this order. Moreover, the pretrial conference order has not, to this day, to our knowledge, been modified so as to remove compensation as an issue in the case. What the trial court did was to remove the issue from the case as a matter of law by adopting a finding made in the previous case. This it could not do because this finding had been vacated and annulled by the reversal of the judgment predicated upon such finding.

We conclude that the findings of fact, and the conclusions of law made by the trial judge on the issue of necessity were improper because of the conclusiveness of the resolution of the Commission as to public necessity; and we conclude, further, that the findings of fact that plaintiff was guilty of bad faith and abuse of discretion are unsupported in the record, and that, accordingly, the conclusions of law on the issue of public use are likewise improper. However, a new trial is not necessary on the issues of public use and necessity if the findings are amended to conform to the views herein ex-

pressed. The judgment must, however, be reversed because the issue of compensation has not been determined.

The judgment is reversed with directions that the issue of compensation be tried by a jury, unless a jury be waived, and that the trial court's findings of fact and conclusions of law be amended in accordance with the views herein expressed. Defendant will recover his costs on appeal.

Bray, P. J., and Sullivan, J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied January 29, 1964.